IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS D. ARTHUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 07-0722-WS-M |
| | ) |
| RICHARD ALLEN, etc., et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on the defendants' motion to dismiss. (Doc. 19). The plaintiff has filed a response and the defendants a reply, (Docs. 20, 21), and the motion became ripe for resolution on November 13, 2007.[1] After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion to dismiss is due to be granted.

This case represents the second iteration of the plaintiff's challenge to Alabama's lethal injection protocol. In May 2007, the plaintiff filed a lawsuit seeking to enjoin the defendants "from using the State of Alabama's current lethal injection procedures to execute him." (*Arthur v. Allen*, Civ. No. 07-0342-WS-C ("*Arthur I*"), Doc. 1 at 1-2). Under those procedures, the state employs a three-drug sequence in inducing death: (1) a short-acting anesthetic (sodium pentothal); (2) a drug inducing muscle paralysis (pancuronium bromide); and (3) a final, lethal drug (potassium chloride). The complaint alleged that potassium chloride is capable of causing excruciating pain to an inadequately anesthetized person and that the paralysis induced by pancuronium bromide would prevent an insufficiently anesthetized person from alerting the outside world to his distress through muscle movement. The complaint alleged that the drugs utilized, the

---

[1] Under the expedited schedule adopted by the Court on the plaintiff's motion, the defendant's reply brief was filed on Friday, November 9, 2007. The next business day was November 13.

standards for their administration, and inadequate qualifications for personnel involved in the process, "create a grave and substantial risk that [the plaintiff] will be conscious throughout the execution process and, as a result, will experience an excruciatingly painful and protracted death." (*Id*. at 9, ¶ 31; *accord id.* at 10, ¶ 34).

On August 10, 2007, the Court granted the defendants' motion to dismiss, based on the specialized "'equitable principles at issue when inmates facing imminent execution delay in raising their § 1983 method-of-execution challenges.'" (*Arthur I*, Doc. 19 at 8-9 (quoting *Grayson v. Allen*, 491 F.3d 1318, 1322 (11th Cir. 2007)).[2]  On September 17, 2007, the Eleventh Circuit affirmed, leaving intact the plaintiff's September 27, 2007 execution date. *Arthur v. Allen*, 2007 WL 2709942 (11th Cir. 2007) ("*Arthur II*"). On September 21, 2007, the plaintiff filed with the Supreme Court a petition for writ of certiorari and motion to stay. (Doc. 1 at 3, ¶ 9). The petition and motion remain pending. (Doc. 20 at 29).

On September 25, 2007, the Supreme Court granted a petition for writ of certiorari in *Baze v. Rees*, 2007 WL 2075334 (2007), to consider the constitutionality of the three-drug regimen employed by both Kentucky and Alabama. On September 26, 2007, the State of Alabama, through Governor Riley, announced that changes would be made to its lethal injection protocol. On September 27, 2007, Governor Riley granted the plaintiff a 45-day stay of execution, to allow the state time to modify its protocol. (Doc. 1, Exhibit A). On September 28, 2007, the State moved the Alabama Supreme Court to set an execution date. (*Id*. at 6, ¶ 16). On October 31, 2007, the Supreme Court set an execution date of December 6, 2007. (Doc. 19, Exhibit I).

Meanwhile, the plaintiff filed this lawsuit on October 9, 2007, seeking an injunction "to prohibit the Defendants from using the lethal injection procedures as recently modified by the State of Alabama to execute him." (Doc. 1 at 1). Using the identical language employed in his first lawsuit, the complaint alleges that the

---

[2]*Arthur v. Allen*, 2007 WL 2320069 at *5 (S.D. Ala. 2007).

constitutional violation arises from the risk that the plaintiff will be conscious during his execution and thus experience excruciating pain from the potassium chloride. (Doc. 1 at 12, ¶ 45; *id*. at 16, ¶ 65).

The modifications to the protocol consist of the following additions to the pre-existing procedures: (1) examination of the prisoner by an execution team member, following administration of the sodium pentothal but before administration of the pancuronium bromide, to assess his consciousness (by calling his name, gently stroking his eyelashes, and pinching his arm); and (2) administration of a second dosage of sodium pentothal if the preceding examination reveals consciousness. (Doc. 19, Exhibit H, ¶ 2).[3]

The plaintiff does not allege that the modifications to the protocol cause or exacerbate an Eighth Amendment violation. Rather, he alleges only that they "do not mitigate" the allegedly unconstitutional risk already posed by the protocol in effect at the time of his previous lawsuit. (Doc. 1 at 16, ¶ 63; *accord id.* at 15, ¶ 56; *id*. at 2 (execution is cruel and unusual "in spite of any modifications" to the protocol). The modifications, in short, do not provide the basis, or even part of the basis, for the plaintiff's constitutional challenge.[4]

Instead, the plaintiff employs the modifications for the proposition that they, when added to the pre-existing protocol, create a different protocol — one which he may challenge without the timeliness objections that doomed his previous lawsuit. The difficulty is that this "new" protocol is identical to the "old" protocol in every particular

---

[3]The plaintiff purports to question whether the state made these changes, (Doc. 20 at 13 n.2), but his complaint alleges the first, and his brief concedes both. (Doc. 1 at 14, ¶ 53; Doc. 20 at 9, 17, 23). At any rate, the plaintiff's insistence that material beyond the complaint not be considered, (*id*. at 13 n.2), would simply shrink the scope of the modifications without aiding his case.

[4]This is not surprising, since it would be difficult to conceive how adding the safeguards of physical confirmation of unconsciousness (even by an unqualified individual) and additional anesthetic could affirmatively increase the chances of inflicting unconstitutional pain.

as to which the plaintiff finds constitutional objection. No new wrong has been perpetrated, no new or heightened danger introduced.[5] The plaintiff is therefore in precisely the same situation as he was in August, and his current lawsuit must be dismissed on precisely the same grounds as was its predecessor.

In particular, the petitioner has not overcome the strong presumption against the grant of injunctive relief that arose because he unreasonably delayed in bringing this action and because he could have brought his claim in time to allow consideration of its merits without requiring a stay of execution. *See Arthur I*, 2007 WL 2320069 at *2-4. The merits of the plaintiff's claim, including appeal, cannot be litigated in three weeks,[6] and the possibility that the Supreme Court will grant the plaintiff's pending motion to stay does not, as he suggests, license the Court to ignore the December 6 execution date now in place.[7]

For the reasons set forth above, the defendants' motion to dismiss is **granted**. Judgment shall be entered accordingly by separate order.

DONE and ORDERED this 15th day of November, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[5] This is true whether the modifications are considered "substantial," as argued by the plaintiff, or "minor," as insisted by the defendants.

[6] *Arthur II*, 2007 WL 2709942 at *4 ("As the district court noted, four months is not enough time for this case to be fully adjudicated.").

[7] Because the case is due to be dismissed under these specialized equitable principles, the Court need not address the defendants' alternative arguments that dismissal is required based on lack of jurisdiction, res judicata, law of the case, laches, and/or statute of limitations.